# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 21-0334V

| | |
|---|---|
| ROBERT LENHART,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: January 23, 2024 |

*Andrew Donald Downing*, Van Cott & Talamante, PLLC, Phoenix, AZ, for Petitioner.

*Benjamin Patrick Warder*, U.S. Department of Justice, Washington, DC, for Respondent.

### FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

On January 9, 2021, Robert Lenhart filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine he received on February 19, 2020. Petition at ¶1, 3. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that the onset of Petitioner's pain more likely than not occurred within 48 hours of his vaccination, and that he has satisfied all of

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

the requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I. Relevant Procedural History

On July 22, 2022, Respondent filed a status report indicating that he was amenable to settlement discussions. ECF No. 26. After a period of negotiation, the parties reached an impasse on January 30, 2023. ECF No. 33. Accordingly, on March 23, 2023, Respondent filed his Rule 4(c) Report and a Motion to Dismiss ("Mot."). *See* ECF No. 35. Respondent argues that Petitioner has failed to establish entitlement to compensation because he has not provided preponderant evidence that the onset of his pain occurred within 48 hours of his vaccination. Mot. at 9-10. Petitioner filed responses to Respondent's Motion on March 29, 2023 ("Resp. 3/29/23"), May 4, 2023 ("Resp. 5/4/23"), and May 31, 2023 (Resp. 5/31/23"). ECF No. 36, 39-40. Respondent filed a reply ("Repl.") on April 28, 2023. ECF No. 38.

The matter is now ripe for adjudication.

## II. Relevant Factual History

Petitioner received a flu vaccine in his left deltoid on February 19, 2020, at a Walmart Pharmacy in Peoria, AZ. Ex. 2 at 8-9. He has stated that he "continued" to have pain during the weeks following his vaccination. Ex. 1 at ¶2.

On April 3, 2020, Petitioner had a cystoscopy and was diagnosed with outlet obstruction secondary to enlarged prostate. Ex. 6 at 17-19. On April 8, 2020, he had a telemedicine cardiology appointment. Ex. 4 at 7-11. Petitioner did not report shoulder pain at either visit.

The first record documenting a potential shoulder injury comes from the same month. On April 20, 2020, Mr. Lenhart had an appointment with his primary care provider ("PCP") for a pre-operative examination. Ex. 3 at 19-23. During the visit, he reported left shoulder pain "present the last few weeks. Admits to increased pain associated with extra use with painting and house maintenance projects." *Id*. at 20. The record further states that Petitioner "does admit to some left shoulder pain that occurred after doing some significant painting. The left shoulder does wake him at night." *Id*. The assessment was bursitis and Petitioner was encouraged to use over-the-counter medications and ice, and to follow up in 3-4 weeks. *Id*.

On May 20, 2020, Petitioner returned to his PCP with continued complaints of "throbbing pain that has been present for the past 3 months." Ex. 3 at 12. Petitioner specifically stated that he received a flu vaccination on February 19th, and that "the pain

started after the injection and never stopped hurting." *Id*. He was assessed with bursitis and rotator cuff syndrome. *Id*. at 7.

Petitioner had x-rays of his left shoulder on May 22, 2020, which revealed mild acromioclavicular arthritis. Ex. 3 at 87. An MRI on June 15, 2020 revealed a chronic complete or near complete full-thickness tear of the supraspinatus tendon with associated fluid in the bursa, indistinct tearing of the infraspinatus tendon with severe focal tendinosis, small partial-thickness tear of the subscapularis tendon with moderate tendinosis, mild to moderate osteoarthritis, and a small glenohumeral joint effusion. Ex. 7 at 14-15.

Petitioner returned to his PCP on June 30, 2020, to discuss the imaging. Ex. 3 at 2-5. He reported that his left shoulder pain had improved since his last visit and that he had begun taking Celebrex,³ which seemed to help. *Id*. at 3. He was referred to an orthopedic surgeon and advised to continue taking Celebrex. *Id*. at 2.

On July 9, 2020, Petitioner saw an orthopedic physician's assistant for left shoulder pain that "started in February following a flu shot." Ex. 7 at 17. Mr. Lenhart was assessed with a rotator cuff tear and offered treatment options, including anti-inflammatories, physical therapy, and cortisone injections. *Id*. at 20. He was referred to physical therapy to set up a home exercise plan and advised to continue taking Celebrex. *Id*. Petitioner was encouraged to consider a cortisone injection if his symptoms did not improve. *Id.*

On July 20, 2020, Petitioner had an initial physical therapy evaluation. Ex. 7 at 23. He reported that "he developed left shoulder pain after receiving a flu injection in February." *Id*. He noted that his shoulder had improved and that he "had resumed swimming ½ hour per day." *Id*. His was assessed a 15% functional limitation. *Id*. Petitioner was given a home exercise plan and discharged. *Id*. at 25. He reported that the home exercises "did not really relieve the pain." Ex. 1 at ¶9.

On September 18, 2020, Petitioner filed a report with the Vaccine Adverse Event Reporting System ("VAERS"). Ex. 5 at 2-3. He reported that the "adverse event" began on February 20, 2020. *Id*. at 2. He stated that his "arm was still sore the next day from the shot. Over the next few weeks it continued to be sore in the muscle/upper area." *Id*. at 3. He stated that is arm still hurt at the time of the report. *Id*.

On November 16, 2020, Petitioner returned to his PCP. Ex. 3 at 97-101. He reported doing the home exercises every other day, but denied any improvement in left shoulder pain. *Id*. at 99. Petitioner stated that he was "hesitant to consider anti-inflammatory [medication] or cortisone treatments." Ex. 1 at ¶11. He was advised to

---

³ It is not clear what provider prescribed Celebrex nor for what condition.

3

continue using ice and over the counter medications and to follow up with his orthopedist. *Id.* at 97.

Petitioner did not seek any additional treatment after November 16, 2020. He has stated that he did not follow up with his orthopedist due to the Covid-19 pandemic. Ex. 1 at ¶12.[4] *Id*.

### III. Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events

---

[4] Petitioner stated that in January 2021 he received the Covid-19 vaccine and then on February 2, 2021, retuned to this orthopedist and received a cortisone injection in his shoulder. However, no record of the February 2, 2021 visit was filed and Petitioner stated in a Status Report on November 18, 2021 that he received no treatment after November 2020. *See* ECF No. 20.

when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.     Findings of Fact – Onset

Respondent maintains that Petitioner has not established that his pain began within 48 hours of his vaccination because the record of his first treatment for shoulder pain, from April 20, 2020, contains "inconsistent information regarding not only the causes to which he attributed his left shoulder pain, but also the timing of the onset of his left shoulder pain." Mot. at 10; Repl. at 8. That record is admittedly problematic. In particular, it appears to relate Petitioner's shoulder pain to painting and other house repairs, rather than to his vaccination. Ex. 19 at 20. In fact, the only reference to the vaccine in the record indicates "flu injection 01/2020." *Id*. And the only references to the timing of the onset of Petitioner's shoulder pain are that it occurred "after doing some significant painting" and had been "present the last few weeks." *Id*. Respondent argues that these statements reveal that the onset of Petitioner's shoulder pain began significantly *after* his vaccination (as the visit was 61 days later), and that the painting was the more likely "original cause" of Petitioner's shoulder pain. Repl. at 7-8.

Petitioner argues, in contrast, that the reference to "the last few weeks," is "obviously a generalization of symptom onset," and that "Mr. Lenhart likely meant two months of pain." Resp. 3/29/23 at 10. He further highlights that the record, in one place, states that Petitioner had "increased pain *associated* with extra use with painting and house maintenance repairs" (emphasis added), suggesting that the shoulder pain

predated the painting but was thereafter aggravated. Resp. 5/4/23 at 5. Finally, Petitioner argues that "clear, cogent, and consistent testimony" can overcome the inconsistencies in medical records. Resp. 3/29/23 at 9-10.

While Petitioner is correct that reliable testimony can be helpful in overcoming inconsistencies in records, he has not provided substantially helpful testimony regarding the onset of his pain in this case. In his signed statement, Petitioner states only that his "upper arm continued to ache" "over the following weeks" after his vaccination, without any clear statement of when his pain began. Ex. 1 at ¶2. Further, he states only that "he mentioned to [his PCP] that [he] was experiencing left shoulder pain" at the April 20, 2020 visit, without any explanation for why his statements about painting and house repairs as alternative explanations for it should be given less weight. *Id*. at ¶4. Finally, Petitioner has not filed any supplemental testimony addressing these issues. Thus, while none of Petitioner's testimony conflicts with the information in the records, it does not provide substantial additional detail either.

Nevertheless – and as Respondent concedes - there are multiple records *after* the first medical treatment, but before the filing of the Petition, that not only consistently relate Petitioner's pain to his vaccination but place the onset close in time to his vaccination. Repl. at 7. For example, at his second appointment, on May 20, 2020, Petitioner reported left shoulder pain "for the past three months" and that he "was given a flu injection on 2/19/2020" with pain that "started right after and never stopped hurting." Ex. 3 at 12. Then, at his first visit with an orthopedist that July, Petitioner reported that his pain "started in February following a flu shot." Ex. 7 at 17. At his physical therapy evaluation on July 20, 2020, Petitioner reported that his shoulder pain began "after receiving a flu vaccination in February." *Id*. at 23. Finally, on his VAERS report dated September 18, 2020, Petitioner reported that his pain began the day after his vaccination, which continued over the following weeks and to the present. Ex. 5 at 2-3. While these records do not negate the problematic April record, Petitioner need only preponderantly establish that his pain "more likely than not" began within 48 hours of his vaccination. That preponderance favors Petitioner on the issue of onset.

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination.

## V.     Ruling on Entitlement

### A.     *Requirements for Table SIRVA*

I have found that Petitioner has preponderantly established that his pain began within 48 hours after his flu vaccination. 42 C.F.R. § 100.3(c)(10)(ii). Respondent has not

contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(i), (iii), (iv). Accordingly, I find that Petitioner has provided preponderant evidence to establish that he suffered a Table SIRVA injury.

      B.    *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, he need not prove causation. Section 11(c)(1)(C). However, he must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received an influenza vaccine in his left deltoid on February 19, 2020, at Walmart Pharmacy in Peoria, AZ. Ex. 2 at 9; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that he has not filed any civil action or received any compensation for his vaccine-related injury, and there is no evidence to the contrary. *See* Ex. 1 at ¶13; Section 11(c)(1)(E) (lack of prior civil award). Finally, it is undisputed that Petitioner continued treating his vaccine-injury through November 16, 2020, which is more than six months after his vaccination on February 19, 2020. Ex. 3 at 97; Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

    **IT IS SO ORDERED.**

                                <u>s/Brian H. Corcoran</u>
                                Brian H. Corcoran
                                Chief Special Master